# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JAMES P. LARWETH,**

    **Plaintiff/Counter-Defendant,**

    **vs.**

**MAGELLAN HEALTH, INC.,**

    **Defendant/Counter-Plaintiff.**

**Case No.: 6:18-cv-823-Orl-41DCI**

## DEFENDANT/COUNTER-PLAINTIFF MAGELLAN'S MOTION TO COMPEL PLAINTIFF/COUNTER-DEFENDANT LARWETH TO PROVIDE COMPLETE RESPONSES TO INTERROGATORY NOS. 12, 14, AND 17, AND TO PRODUCE DOCUMENTS RESPONSIVE TO REQUEST NOS. 8, 11, 17, 18, AND 20

Defendant/Counter-Plaintiff, MAGELLAN HEALTH, INC. ("Magellan" or the "Company"), hereby moves this Court to compel Plaintiff/Counter-Defendant, JAMES P. LARWETH ("Larweth"), to provide complete responses to Interrogatory Nos. 12, 14, and 17 of Magellan's First Set of Interrogatories and to produce documents responsive to Request Nos. 8, 11, 17, 18, and 20 of Magellan's First Request for Production of Documents. Additionally, Magellan respectfully requests that the Court allow it to re-depose Larweth regarding any further information or documents provided or produced by Larweth in response to this Motion or any Court order. Finally, because Larweth's failure to cooperate in discovery in this matter on the issues most central to this case has been, from the start, in bad faith and wholly designed to delay the proceedings, Magellan requests that this Court award the

Company its reasonable attorneys' fees incurred in making this Motion.  For the reasons set forth below, the Motion should be granted.

## PRELIMINARY STATEMENT

In his Complaint (Doc. 1), Larweth, a former Senior Vice President of Business Development in Magellan's pharmaceutical rebate contracts division who was terminated in January 2018, brings claims arising out of his employment with the Company. Throughout this litigation, Larweth's counsel has vaguely indicated that Larweth plans on "re-entering the rebate sales market" and that all of Magellan's customers[1] are "fair game." *See* Magellan's Counterclaim (Doc. 35), ¶ 7.  Both prior to and throughout this litigation, Magellan's counsel repeatedly has asked Larweth's counsel to provide additional details about Larweth's intentions so that the Company can determine whether such puffery is truly indicative of Larweth's intent to compete with Magellan in violation of his Employment Agreement or is, instead, merely an empty threat employed to force early settlement discussions and provide leverage for his own claims.

Despite such attempts, Larweth's counsel did not provide additional details until late October of 2018.  At this time, Larweth's counsel took their empty threats a step further – specifically stating that Larweth has actively been competing with Magellan.  *See id.* at ¶ 8. Based on this statement (the most unequivocal of its kind made by Larweth's counsel), Magellan filed its Counterclaim, in which the Company brought, in relevant part, a breach of contract claim against Larweth based upon his failure to comply with the non-competition and

---

[1] Magellan uses the terms "customers" and "clients" interchangeably throughout this Motion.

non-solicitation restrictive covenants of his Employment Agreement with Magellan.  *See id.* at ¶¶ 52-55.

In litigating its breach of contract claim, Magellan has sought discovery on basic issues central to such claim; namely, the ways in which Larweth is competing or plans to compete with Magellan, the identities of the Magellan customers with whom Larweth is engaging in business (or with whom he is attempting to engage in business), and details regarding the extent and scope of Larweth's competing business relationships (both with Magellan customers and other entities).  Magellan has also sought to determine which current or former Magellan employees Larweth has been contacting or soliciting for employment with Larweth's new business ventures.  This information is at the crux of Magellan's breach of contract claim. Further, discovery directed towards these issues is obviously important because – Larweth's counsel's vague written threats aside – Magellan needs actual *evidence* to demonstrate to this Court that Larweth is in fact competing with the Company.

Despite the relevancy and importance of any and all information regarding Larweth's competing business efforts and relationships, Larweth has flatly refused to meaningfully respond to any of Magellan's discovery requests seeking such information.  This deliberate refusal is now based solely on the thinly-veiled guise that such information is protected by oral and/or written "confidentiality agreements" *with the very customers and other entities* with whom Larweth has established or seeks to establish competing business relationships.[2]  Such

---

[2] Originally, Larweth objected on numerous other baseless grounds, which he has since seemed to abandon, and he now objects to the discovery requests in question only on the basis of confidentiality. *See infra* Exhibits C-D and G-H.

refusal is especially egregious in light of: (a) Larweth's previous failure to provide Magellan with *any* substantive information regarding his alleged competition (despite the Company's counsel's repeated requests); and (b) the fact that counsel for Magellan and Larweth have agreed to enter into and have been working on finalizing a Confidentiality Agreement to facilitate the production – from both sides – of all confidential information in this litigation.[3] Without indicating why or how such Confidentiality Agreement is insufficient to protect information about Larweth's competing business efforts and relationships, Larweth has made clear that he will only produce the requested information subject to an order from this Court. This position is not taken in good faith and is contrary to established law regarding the scope of discovery in federal court. Larweth's alleged "confidentiality agreements" with third parties does not relieve Larweth of his obligation to meaningfully participate in discovery and produce information and documents that are critical to Magellan's claims in this matter.[4] Larweth's

[3] The draft Confidentiality Agreement, which has been exchanged among Magellan and Larweth's counsel, provides both a "Confidential" designation and a heightened "Attorneys' Eyes Only" designation for more sensitive documents or information. The Confidentiality Agreement is close to being finalized. Regardless of the final Confidentiality Agreement being in place, Magellan nevertheless agreed to produce, and did produce, in excess of 600 documents several weeks ago so that Larweth's counsel would have them in advance of the deposition he was taking of Magellan Rx's CEO on January 28, 2019, provided that Larweth's counsel would agree to keep them confidential until execution of the Confidentiality Agreement, and any subsequent re-designations were made, as needed. When the undersigned asked Larweth's counsel for the reciprocal courtesy and offered to treat any information sought herein as confidential, Larweth's counsel refused.

[4] Similarly, Larweth's legally incorrect view regarding the enforceability of his restrictive covenants with Magellan is not grounds to refuse to participate in discovery on these issues. Larweth's position that the restrictive covenants at issue are unenforceable -- which Magellan firmly denies – is simply unrelated to the instant Motion to Compel. Unless and until a court of law establishes that Larweth's restrictive covenants are unenforceable, Magellan is entitled to participate in discovery relevant to its claim that Larweth has violated such restrictive covenants.

evasiveness and delay tactics must stop now: he has been sued in federal court, and he is required to play by the Court's rules.

## FACTUAL BACKGROUND

**A.     Larweth's Initial Discovery Responses (Or Lack Thereof) And Objections Were Made In Bad Faith To Impede Magellan's Discovery.**

On November 1, 2018, Magellan served its First Set of Interrogatories and its First Request for Production of Documents (the "initial discovery requests") on Larweth.  *See* Magellan's First Set of Interrogatories, attached hereto as Exhibit A, and Magellan's First Request for Production of Documents, attached hereto as Exhibit B.

Larweth responded to Magellan's initial discovery requests (the "initial discovery responses") on December 21, 2018.  *See* Larweth's Responses to Magellan's First Set of Interrogatories, attached hereto as Exhibit C, and Larweth's Response to Magellan's First Request for Production of Documents, attached hereto as Exhibit D.[5]

In his initial discovery responses, Larweth objected outright to virtually *every* interrogatory and request for production on multiple bases and failed to provide a single substantive response or to produce a single responsive document.  Larweth's numerous objections were not made in good faith, and his failure to meaningfully respond to Magellan's initial discovery requests was a deliberate effort to impede the Company's discovery efforts and further delay any revelation of his competing activities and other violations of his restrictive covenants.

---

[5] Notably, Larweth did not serve a copy of his initial discovery responses on Magellan's lead counsel, Joyce Ackerbaum Cox.  *See* Correspondence between Counsel, attached hereto as Exhibit E.

On January 2, 2019, counsel for Magellan expressed their concerns regarding Larweth's discovery deficiencies to Larweth's counsel and asked to set up a call to discuss the same.  *See* Correspondence between Counsel, attached hereto as Exhibit F.  Counsel for Magellan and Larweth conferred regarding the deficiencies in Larweth's initial discovery responses via telephonic conferences on January 9, 2019, and January 11, 2019, after which Larweth agreed to produce amended discovery responses.

**B.     Larweth's Amended Discovery Responses Do Not Include Responsive Information Critical To Magellan's Breach of Contract Claim.**

Larweth served his Amended Responses to Magellan's First Set of Interrogatories and First Request for Production of Documents (the "amended discovery responses") on January 18 and 21, 2019, respectively.  *See* Larweth's Amended Responses to Magellan's First Set of Interrogatories, attached hereto as Exhibit G, and Larweth's Amended Responses to Magellan's First Request for Production of Documents, attached hereto as Exhibit H. Following a review of Larweth's amended discovery responses, Magellan's counsel determined that a number of deficiencies still remained.  On February 2, 2019, counsel for Magellan expressed their concerns regarding the remaining discovery deficiencies to Larweth's counsel.  *See* Correspondence between Counsel, attached hereto as Exhibit I. Counsel for Magellan and Larweth conferred regarding Larweth's continued discovery deficiencies via telephonic conference on February 9, 2019.

During this call, counsel for Magellan and Larweth specifically discussed, among others, Larweth's responses to Interrogatory Nos. 12, 14, and 17, which ask for information regarding the efforts Larweth has taken to compete with Magellan and the identity of Magellan's customers whom Larweth has solicited following his separation from the

Company.[6]  This information is absolutely critical to Magellan's breach of contract claim. Despite such obvious relevancy, Larweth has refused to provide this information, even subject to a Confidentiality Agreement between the Parties.

Following this telephonic conference, it became clear that Larweth is unwilling to retract from his unreasonable position that "confidential" information regarding his efforts to compete with Magellan – again, all of which is tantamount to Magellan's breach of contract claim – is somehow exempted from discovery in this case absent a court order[7].  As a result of this stalemate, Magellan now files the instant Motion to Compel.

## MEMORANDUM OF LAW

**A.    Larweth Should Be Compelled To Produce Information Sought By Interrogatory Nos. 12, 14, and 17 That Is Critical To Magellan's Breach Of Contract Counterclaim.**

### 1.    Interrogatory No. 12

Interrogatory No. 12 reads as follows: "Identify each and every Person or entity with whom You met, spoke or otherwise communicated concerning engaging in business with them in connection with prescription drug rebate contracts, at any time from December 1, 2017, through the present, other than on behalf of Magellan.  Further indicate if such Person or entity is presently, or has been, a client/customer of the Defendant."  *See* Exhibit A, p. 19.

#### i.    Larweth's Response to Interrogatory No. 12

---

[6] The document requests that correspond and seek similar information to the Interrogatories at issue are Request Nos. 8, 11, 17, 18, and 20.

[7] There remain other deficiencies with Larweth's amended discovery responses that are not raised at this time given Larweth's counsel's representation that he will address these issues in supplemental responses. Magellan reserves the right to bring those to the Court's attention at a later point, if necessary.

In response to Interrogatory No. 12, Larweth initially provided the following response:

> Plaintiff further objects to this interrogatory as being overbroad, unduly burdensome, and not proportional to the needs of the case considering the importance of the discovery sought in resolving this case's issues and the burden and expense of the proposed discovery which outweighs its likely benefit because the term "concerning" as defined in Interrogatory Definitions ¶ 5 is open-ended and without limitation.
>
> Plaintiff also objects to this interrogatory as it is read in conjunction with Interrogatory Instructions ¶ 12, which purports to require Plaintiff to provide each identified Person's "role or responsibility as to the subject matter described in the interrogatory" as being vague and ambiguous. Interrogatory Instruction ¶ 12 is also overbroad, vague, and ambiguous with regard to the requirement that Plaintiff state "whether the person is subject to Your instruction…".
>
> Plaintiff also objects to his interrogatory as being unduly burdensome with regard to the requirement that he indicate and investigate whether any such Persons are or were a "client/customer of the Defendant."
>
> Plaintiff also objects to this interrogatory as it is read in conjunction with Interrogatory Instructions ¶¶ 10-11. Those Interrogatory Instructions improperly require the production of all documents referred to in preparing an answer to this interrogatory as well as those which were referenced, identified, or described in the response.
>
> Finally, Plaintiff objects to this interrogatory as it seeks information that is protected by attorney-client privilege, husband-wife privilege, accountant-client privilege, and the work product doctrine.

*See* Exhibit C, p. 11. Following the Parties' counsel's telephonic conferrals, Larweth amended his response as follows:

> Plaintiff objects to this interrogatory as it is read in conjunction with Interrogatory Instructions ¶ 12, as being vague, and ambiguous with regard to the requirement that Plaintiff state "whether the person is subject to Your instruction…".
>
> Plaintiff also objects to this interrogatory as it is read in conjunction with Interrogatory Instructions ¶¶ 10-11. Those Interrogatory Instructions improperly require the production of all documents referred to in preparing an answer to this interrogatory as well as those which were referenced, identified, or described in the response.
>
> Finally, Plaintiff objects to this interrogatory as it seeks information that is confidential, protected by attorney-client privilege, husband-wife privilege, accountant-client privilege, and the work product doctrine. Subject to those objections, Plaintiff met with various entities regarding the prescription drug rebate business. **The identity of those entities and the substance of those meetings, however, are confidential pursuant to the terms of agreements with those companies which**

> **Plaintiff is required to honor. Plaintiff will identify the relevant entities if required to disclose such information by Court order, or, if those entities consent to such disclosure. Plaintiff further maintains that any confidential information disclosed in response to this interrogatory must be subject to a Court-entered confidentiality order."**

*See* Exhibit G, pp. 14-15 (emphasis added).

> ii.   **Larweth's Objections Should Be Overruled And He Should Be Required To Provide A Complete Response To Interrogatory No. 12.**

Larweth's objections to Interrogatory No. 12 are completely without merit. The only objection on which Larweth continues to rely as the basis to withhold information and documents is his contention that information about the entities with whom he has met regarding the prescription drug business and the substance of such meetings is confidential. Such efforts are unsurprising, given that Larweth's confidentiality objections are untenable under established law.[8]

To this end, the Middle District and other courts throughout the country have made clear that purportedly "confidential" documents are not immune from discovery unless such documents are protected by an identifiable privilege. *See Moss v. GEICO Indem. Co.*, No. 5:10-CV-104-OC-10TBS, 2012 WL 682450, at *3 (M.D. Fla. Mar. 2, 2012) ("The Court is unaware of any statute, rule or case authority for the proposition that documents are not discoverable simply because they contain confidential or sensitive information."); *I.S.E.L., Inc. v. Am. Synthol, Inc.*, No. 3:08-CV-870-J-25TEM, 2009 WL 3367237, at *2 (M.D. Fla. Oct. 15,

---

[8] To the extent Larweth tries to argue that Magellan made similar confidentiality objections to Larweth's discovery, the position is untenable as Magellan has not withheld any information or documents on this basis, nor did it insist on a Court Order to provide any information or documents requested.

2009) (granting motion to compel and explaining that "under Rule 26(c)(G) of the Federal Rules of Civil Procedure, there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery"); *see also Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 692, n.5 (S.D. Fla. 2011); *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 684–85 (D. Kan. 2004) (explaining that "a general concern for protecting confidentiality does not equate to privilege" and holding that "information and documents are not shielded from discovery merely because they are confidential"); *Hanas v. Inner City Christian Outreach Center, Inc.*, Case No. 06–CV10290, 2007 WL 551609, at *2 (E.D. Mich. Feb. 20, 2007) (explain that "privacy or the need for confidentiality is not a recognized basis for withholding discovery" and granting motion to compel); *Sonnino, M.D. v. University of Kansas Hospital Authority*, 220 F.R.D. 633, 642 (D. Kan. 2004) ("It is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that they are confidential.").  Thus, so long as "confidential" information or documents requested are otherwise "relevant to any party's claim or defense and proportional to the needs of the case," such information or documents must be provided.  *See* Fed. R. Civ. P. 26(b)(1).

In this case, information about the identities of the entities with whom Larweth has met regarding the prescription drug rebate business -- the exact business he was involved with at Magellan -- along with the substance of such meetings, is highly relevant to Magellan's breach of contract claim.  In fact, this information is central to Magellan's claim, which concerns whether Larweth has attempted to compete with Magellan or attempted to solicit Magellan's customers in violation of his Employment Agreement.  Moreover, such factual information is

not protected by any identifiable privilege. The information sought by Interrogatory No. 12 is therefore absolutely necessary to the instant litigation, and Larweth must be ordered to produce the same.

### 2.     Interrogatory No. 14

Interrogatory No. 14 reads as follows: "For each such business or entity identified in Interrogatory No. 13[9], a) specify the industry in which it operates, b) the services it provides (or intends to provide), c) the date it first began operations and the date you became involved with the business, d) its monthly revenues from inception through the present, and e) every current or former client of Magellan with which it (or anyone on its behalf) has done business." *See* Exhibit A, p. 21.

### i.     Larweth's Response to Interrogatory No. 14

In response to Interrogatory No. 14, Larweth initially provided the following response:

> Plaintiff incorporates the objections raised in response to Interrogatory number 13 above. Plaintiff objects to this interrogatory as being overbroad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of the case considering the importance of the discovery sought in resolving this case's issues and because the burden and expense of the proposed discovery outweighs its likely benefit. As phrased, this interrogatory purports to require Plaintiff to provide the requested information for each and every business he and his agents (including his attorneys) owned, worked for, provided services for, or have been involved with in any capacity, regardless of whether such business competes with Magellan and regardless of what their role is or was in such companies, including those which they hold stock in.
>
> Plaintiff also objects to this interrogatory as being overbroad, unduly burdensome, not proportional to the needs of the case considering the importance of

---

[9] Interrogatory No. 13 reads as follows: "Since December 1, 2017, identify each and every business or entity (other than Magellan) that You own, have worked for, provided services for, or have been involved with in any capacity and your role with the same (whether as an owner, investor, principal, employee, or consultant). State Your dates of employment for each entity provided, your title, and any income you have earned or received." *See* Exhibit A, p. 20.

the discovery sought in resolving this case's issues and because the burden and expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to this interrogatory as being overbroad and seeking irrelevant information because it seeks financial information regarding such companies since their inception, regardless of when that may have been or when Plaintiff worked for such companies.

Plaintiff further objects to this interrogatory as being vague and ambiguous with regard to the identity of "every current or former client of Magellan". Plaintiff also objects to this interrogatory as it is read in conjunction with Interrogatory Instructions ¶¶ 10-11. Those Interrogatory Instructions improperly require the production of all documents referred to in preparing an answer to this interrogatory as well as those which were referenced, identified, or described in the response.

Finally, Plaintiff objects to this interrogatory as it seeks confidential personal and business financial information and information that is protected by attorney-client privilege, husband-wife privilege, accountant-client privilege, and the work product doctrine.

*See* Exhibit C, pp. 12-13.  Following the Parties' counsel's telephonic conferrals, Larweth

amended his response as follows:

Plaintiff incorporates the objections raised in response to Interrogatory number 13 above.

Plaintiff further objects to this interrogatory as being overbroad and seeking irrelevant information because it seeks financial information regarding such companies since their inception, regardless of when that may have been or when Plaintiff worked for such companies.

Plaintiff also objects to this interrogatory as it is read in conjunction with Interrogatory Instructions ¶¶ 10-11. Those Interrogatory Instructions improperly require the production of all documents referred to in preparing an answer to this interrogatory as well as those which were referenced, identified, or described in the response.

Finally, Plaintiff objects to this interrogatory as it seeks confidential personal and business financial information and information that is protected by attorney-client privilege, husband-wife privilege, accountant-client privilege, and the work product doctrine.

Subject to those objections:

1) Anton Rx, LLC

 a. Formulary consulting and rebate brokering.

 b. Formulary consulting.

 c. This company was founded June 14, 2018. Plaintiff has been involved in the company since its inception.

 d. This information will be provided following entry of an appropriate confidentiality agreement.

  e. **Anton Rx, LLC, has discussed or attempted to discuss doing business with various current or former Magellan clients. The identity of those entities, however, are confidential pursuant to the terms of agreements with those companies which Plaintiff is required to honor. Plaintiff will identify the relevant entities if required to disclose such information by Court order, or, if those entities consent to such disclosure.** Plaintiff further maintains that any confidential information disclosed in response to this interrogatory must be subject to a Court-entered confidentiality order.

2) Anton Health, LLC

  a. This is an advisory board meeting planning company for pharmaceutical manufacturers.

  b. Advisory board meeting planning.

  c. This company was founded June 12, 2018. Plaintiff has been involved in the company since its inception.

  d. This information will be provided following entry of an appropriate confidentiality agreement.

  e. **Anton Health, LLC, has discussed or attempted to discuss doing business with a current or former Magellan client. Those discussions were not related to the rebate contract industry. The identity of those entities, however, are confidential pursuant to the terms of agreements with those companies which Plaintiff is required to honor. Plaintiff will identify the relevant entities if required to disclose such information by Court order, or, if those entities consent to such disclosure.** Plaintiff further maintains that any confidential information disclosed in response to this interrogatory must be subject to a Court-entered confidentiality order.

3) Polestar LLC

  a. Consulting company in the healthcare industry.

  b. Consulting services.

  c. Although registered earlier as a holding company, this company first began conducting business on or around January 31, 2018. Plaintiff has been involved in the company since its inception.

  d. This information will be provided following entry of an appropriate confidentiality agreement.

  e. None.

*See* Exhibit G, pp. 16-18 (emphasis added).

   **ii. Larweth's Objections Should Be Overruled And He Should Be Required To  Provide A Complete Response To Interrogatory No. 14.**

Larweth's objections to Interrogatory No. 14 are also without merit.  With respect to his objection that the "identity of those entities [i.e., "the various current or former Magellan clients with whom Larweth has discussed or attempted to discuss doing business"]…are confidential pursuant to the terms of agreements with those companies which Plaintiff is required to honor," such purported confidentiality does not – and cannot – save the client identities at issue from discovery in this matter.  *See Am. Gen. Life Ins. Co. v. Lantigua*, No. 3:13-CV-1363-J-32JBT, 2014 WL 12620808, at *1 (M.D. Fla. Aug. 5, 2014) ("[T]he identities of witnesses are discoverable even when counsel has assured the confidential witnesses that their identities would not be revealed without a court order." (internal quotations and citations omitted)).  Magellan's non-solicitation claim (and, in part, its non-competition claim) hinges on whether Larweth has done business with or attempted to do business with any of Magellan's former customers; the identities of the Magellan clients which whom Larweth *admits* attempting to do business with are therefore absolutely tantamount to the Company's claims.  Larweth cannot, as he attempts to do now, avoid disclosing the identity of such customers, which, again, are central to Magellan's breach of contract claim, under the pretense of confidentiality.  To the contrary, such information must be provided to allow Magellan to fully litigate its claims.

### 3.     Interrogatory No. 17

Interrogatory No. 17 reads as follows: "Identify each and every meeting, conference, or event you have participated in at any time since January 6, 2018, relating to the rebate sales industry, and specify your role with respect to each such meeting, conference or event."  *See* Exhibit A, p. 24.

### i.      Larweth's Response to Interrogatory No. 17

In response to Interrogatory No. 17, Larweth initially provided the following response:

> Plaintiff objects to this interrogatory as being overbroad, unduly burdensome, harassing, seeking irrelevant information, and not proportional to the needs of the case considering the importance of the discovery sought in resolving this case's issues and because the burden and expense of the proposed discovery outweighs its likely benefit. As phrased, this interrogatory purports to require Plaintiff to identify each and every meeting – of any kind – that is somehow related to the "rebate sales industry" that he and his agents (including his attorneys) have in any way participated in. See Interrogatory Instructions ¶ 3 and Interrogatory Definitions ¶ 10.
>
> Plaintiff also objects to this interrogatory as being vague and ambiguous with regard to the meaning of "meeting".
>
> Plaintiff further objects to this interrogatory as being overbroad, unduly burdensome, and not proportional to the needs of the case considering the importance of the discovery sought in resolving this case's issues and the burden and expense of the proposed discovery which outweighs its likely benefit because the term "relating to", as defined in Interrogatory Definitions ¶ 5, is open-ended and without limitation. Plaintiff further objects to this interrogatory as being overbroad, vague, and ambiguous with regard to the term "rebate sales industry" as it is not limited to a specific or relevant rebate sales industry.
>
> Plaintiff also objects to this interrogatory as it is read in conjunction with Interrogatory Instructions ¶¶ 10-11. Those Interrogatory Instructions improperly require the production of all documents referred to in preparing an answer to this interrogatory as well as those which were referenced, identified, or described in the response.
>
> Finally, Plaintiff objects to this interrogatory as it seeks information that is protected by attorney-client privilege, husband-wife privilege, accountant-client privilege, and the work product doctrine.

*See* Exhibit C, pp. 14-15.  Following the Parties' counsel's telephonic conferrals, Larweth

amended his response as follows:

> Plaintiff objects to this interrogatory as being overbroad, unduly burdensome, harassing, seeking irrelevant information, and not proportional to the needs of the case considering the importance of the discovery sought in resolving this case's issues and because the burden and expense of the proposed discovery outweighs its likely benefit. As phrased, this interrogatory purports to require Plaintiff to identify each and every meeting – of any kind – that is somehow related to the "rebate sales industry" that he and his agents (including his attorneys) have in any way participated in. See Interrogatory Instructions ¶ 3 and Interrogatory Definitions ¶ 10.
>
> Plaintiff also objects to this interrogatory as being vague and ambiguous with

regard to the meaning of "meeting".

Plaintiff further objects to this interrogatory as being overbroad, unduly burdensome, and not proportional to the needs of the case considering the importance of the discovery sought in resolving this case's issues and the burden and expense of the proposed discovery which outweighs its likely benefit because the term "relating to", as defined in Interrogatory Definitions ¶ 5, is open-ended and without limitation.

Plaintiff further objects to this interrogatory as being overbroad, vague, and ambiguous with regard to the term "rebate sales industry" as it is not limited to a specific or relevant rebate sales industry.

Plaintiff also objects to this interrogatory as it is read in conjunction with Interrogatory Instructions ¶¶ 10-11. Those Interrogatory Instructions improperly require the production of all documents referred to in preparing an answer to this interrogatory as well as those which were referenced, identified, or described in the response.

Finally, Plaintiff objects to this interrogatory as it seeks information that is protected by attorney-client privilege, husband-wife privilege, accountant-client privilege, and the work product doctrine.

Subject to those objections, and in light of the agreement with counsel for Magellan during the meet and confer, Plaintiff responds as follows: Plaintiff attended the AMCP Nexus Conference in October 2018, in Orlando Florida. Plaintiff held meetings at the host hotel, none of which concerned the rebate contract business, and Plaintiff never participated in the conference otherwise. **The identity of those entities and the substance of those meetings, however, are confidential pursuant to the terms of agreements with those companies which Plaintiff is required to honor. Plaintiff will identify the relevant entities if required to disclose such information by Court order, or, if those entities consent to such disclosure**. Plaintiff further maintains that any confidential information disclosed in response to this interrogatory must be subject to a Court-entered confidentiality order.

*See* Exhibit G, p. 20 (emphasis added).

> ### ii. Larweth's Objections Should Be Overruled And He Should Be Required To Provide A Complete Response To Interrogatory No. 17.

Finally, Larweth's objections to Interrogatory No. 17 must also be overruled. Interrogatory No. 17 is not, as Larweth contends, overbroad, unduly burdensome, or harassing, nor does it seek irrelevant information.  To the contrary, Interrogatory No. 17 is narrowly tailored to the specific issues implicated by Magellan's breach of contract claim – i.e., the efforts Larweth has taken to compete with Magellan's pharmaceutical rebate sales business

following his separation from the Company.  Thus, even if the existence or substance of any meetings Larweth participated in regarding such business are, in Larweth's eyes, "confidential," such information is still relevant to Magellan's claims and necessary for the litigation of this action.  And as set forth above, such "confidentiality" concerns cannot and do not shield Larweth from disclosing this information in discovery.  For these reasons, Larweth must provide a complete response to Interrogatory No. 17.

**B.     Larweth Should Be Compelled To Produce Documents Sought By Request Nos. 8, 11, 17, 18, and 20 That Are Critical To Magellan's Breach Of Contract Counterclaim.**

In addition to the Interrogatories described above, a number of Magellan's Requests to Produce ask Larweth to provide documents regarding the efforts he has made to compete with the Company following his employment separation, including the following:

Request 8 – All Documents and Communications relating to discussions with current or former employees or customers of Magellan, including, without limitation, any of the individuals listed on Attachment A to Your September 7, 2018 Fed. R. Civ. P. 26 Initial Disclosures, concerning any of the claims or allegations in the Complaint.

Request No. 11 – All Documents and Communications between You and any current or former customers of Magellan, including, without limitation, AscellaHealth, LLC, Health Partners, Inc., Horizon Blue Cross Blue Shield, EmblemHealth/ConnectiCare, Sentara Healthcare, any current or former Magellan customers listed on Attachment A to your September 7, 2018 Fed. R. Civ. P. 26 Initial Disclosures, and any other current or former Magellan customers.

Request No. 17 – All Documents and Communications relating to You competing against Magellan, attempting to compete against Magellan, or making plans to compete against Magellan.

Request No. 18 – All Documents and Communications relating to You soliciting any individuals or entities, directly or indirectly, including, without limitation, current or former customers of Magellan, for business, and/or Your engaging in business with any individuals or entities, concerning rebates or discounts on prescription drugs, other than Your work on behalf of Magellan.

> Request No. 20 – All Documents and Communications relating to Anton Rx and/or any other business entities You work or worked for, created, formed, or otherwise are or have been affiliated with at any time following the termination of your employment with Magellan that engage in, or compete or intend to compete with Magellan in, the rebate sales industry, and all Documents and Communications relating to Your involvement or role in connection with such business entities.

*See* Exhibit B.

In his Amended Responses to these Requests, Larweth makes *identical* confidentiality-based objections similar to his objections to Interrogatory Nos. 12, 14, and 17.  *See* Exhibit H, pp. 7, 10, 15, 16, 18 ("Responsive materials that Plaintiff believes in good faith are confidential will be produced following the entry of an appropriate confidentiality order unless Plaintiff is barred from producing such materials pursuant to the terms of an agreement with a third-party or otherwise. In that case, Plaintiff will produce the responsive, non-privileged, confidential documents if required to do so by Court order, or, if the third parties that have an interest in the confidentiality of such materials consent to their disclosure. Plaintiff maintains that any confidential information disclosed in response to this request must be subject to a Court-entered confidentiality order.").  For the same reasons described above, these objections are insufficient as a matter of law.  Thus, even if the documents sought – all of which are absolutely central to Magellan's breach of contract claim – are indeed protected by some third-party confidentiality agreement, Larweth is still required to produce them to Magellan.

**C.    Magellan Should Be Permitted To Re-Depose Larweth Regarding Any Further Responses Or Documents He Provides To The Above-Mentioned Discovery Requests.**

Magellan's counsel is currently scheduled to depose Larweth on February 19, 2019, and discovery in this matter is set to close on April 1, 2019.  However, for the above-stated reasons, Magellan expects that Larweth – either by Court order or on his own volition – will

provide more complete responses to the above-mentioned discovery requests at some point following his scheduled deposition.  This in mind, the Company has informed Larweth's counsel that it reserves its right to, upon receipt of such complete responses, to re-depose Larweth for the purpose of questioning him about such additional information.[10]  Should Larweth provide such additional responses at a time making it impossible for Magellan to re-depose Larweth (or any third-party witnesses revealed by such responses) before the current discovery deadline, the Company also reserves the right to move for a brief extension in the discovery period for the limited purpose of accommodating such deposition(s). Magellan will clearly be prejudiced if it is not provided an opportunity to examine Larweth on these critical issues that are belatedly produced through no fault of Magellan's.

**D.      Magellan Is Entitled To An Award Of Its Attorneys' Fees Incurred In Filing The Instant Motion.**

Pursuant to the Federal Rules of Civil Procedure, upon the granting of a Motion to Compel, "the court *must*, after giving an opportunity to be heard, require the party…whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. Pro. 37(a)(5)(A) (emphasis added).  In only three limited circumstances must the Court avoid making such an award: (1) when the movant filed the motion before attempting in good faith to obtain the discovery without court action; (2) when the opposing party's objection was

---

[10] Larweth's counsel will claim they offered to move his deposition to a later date.  Such an offer is unworkable given: (1) the currently scheduled mediation date of February 28, 2019; and (2) the quickly approaching April 1, 2019 discovery deadline.  More importantly, moving the deposition will not cure the issue of Larweth's refusal to provide the requested information absent a court order.

substantially justified; or (3) if other circumstances make an award of expenses unjust. *See* Fed. R. Civ. Pro. 37(a)(5)(A)(i)-(iii).   None of these specific circumstances exist here.   For one, Magellan conferred with Larweth on multiple occasions – via both written correspondence and at least three distinct telephonic conferences – regarding the relief sought in this Motion. Despite such continued attempts, Larweth's counsel has made its position clear (in both writing and over the phone) that it will not provide the requested information absent a court order. With respect to the second circumstance excusing an award of expenses, Larweth's refusal to provide complete responses to the above-mentioned discovery requests is not substantially justified.   While Larweth may have entered into certain "confidentiality agreements" with his customers, prospective customers, or other third parties, such agreements do not relieve Larweth of his discovery obligations.   The law in this area is settled, and Larweth's attempts to ignore such binding precedent are nothing more than his latest effort to delay providing Magellan with information critical to the Company's claims and defenses in this action. Finally, no other circumstances exist that make an award of Magellan's expenses and fees unjust.   As a result, should the Court grant Magellan's Motion to Compel, the Company is entitled to an award of attorneys' fees incurred in bringing such Motion.

## CONCLUSION

For the foregoing reasons, Magellan respectfully requests that this Court grant the instant Motion to Compel and compel Larweth to immediately provide complete responses to Interrogatory Nos. 12, 14, and 17, and to produce documents responsive to Request Nos. 8, 11, 17, 18, and 20.   Additionally, Magellan requests that the Court award the Company its reasonable attorneys' fees incurred in bringing the instant Motion to Compel.

**CERTIFICATION OF CONFERENCE WITH OPPOSING COUNSEL**

The undersigned counsel hereby certifies to this Court that she has conferred with opposing counsel, pursuant to Local Rule 3.01(g) and Federal Rules of Civil Procedure, in an effort to resolve these disputes, but was unable to do so.  More specifically, and as outlined above, counsel for Magellan and Larweth participated in multiple telephonic conferences and exchanged written correspondence in an attempt to resolve the disputes underlying this Motion to Compel but, after much effort, have been unable to come to a resolution without court intervention.

Dated: February 14, 2019.


Respectfully submitted,


*s/Joyce Ackerbaum Cox*
Joyce Ackerbaum Cox, Esq.
Florida Bar No. 0090451
E-Mail:  jacox@bakerlaw.com
Mary Caroline Cravatta, Esq.
Florida Bar No. 125712
E-mail: mcravatta@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Post Office Box 112
Orlando, Florida 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

***Counsel for Defendant/Counter-Plaintiff***
***Magellan Health, Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of February 2019, a true and correct copy

of the foregoing has been served via ECF to all counsel of record on this action:

Christopher S. Prater, Esq.
cprater@pollardllc.com
Jonathan Pollard, Esq.
jpollard@pollardllc.com
David J. Yaffe, Esq.
dyaffe@pollardllc.com
POLLARD PLLC
401 E. Las Olas Blvd., Ste. #1400
Fort Lauderdale, FL 33301


*s/Joyce Ackerbaum Cox*
Joyce Ackerbaum Cox