UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JAMES P. LARWETH,<br>     Plaintiff/Counter-Defendant,<br><br>vs.<br><br>MAGELLAN HEALTH, INC.,<br>     Defendant/Counter-Plaintiff. | Case No.: 6:18-cv-823-Orl-41DCI |

**MAGELLAN'S MOTION FOR PERMANENT INJUNCTION
IN LIGHT OF COURT'S ORDER RENDERING
SUMMARY JUDGMENT IN FAVOR OF MAGELLAN**

Defendant/Counter-Plaintiff, MAGELLAN HEALTH, INC. ("Magellan"), by and through its undersigned counsel, hereby moves this Court for entry of a permanent injunction through and including July 31, 2022, immediately barring Plaintiff/Counter-Defendant, JAMES P. LARWETH ("Larweth"), his agents, Anton Rx, LLC ("Anton Rx"), Anton Health, LLC ("Anton Health"), Polestar Rx, LLC ("Polestar"), and any entities through which he does business or in the future may do business from (1) engaging, directly or indirectly, without exception, in the provision of pharmaceutical rebate management services, and (2) directly or indirectly soliciting any customer of Magellan—as defined by the Magellan Employment Agreement—for purposes of providing pharmaceutical rebate management services. For the reasons set forth below, this Motion should be granted.

## INTRODUCTION

On July 31, 2019, this Court granted Magellan's motion for preliminary injunction, the facts in support of which are fully adopted and incorporated herein,[1] and entered a preliminary injunction enjoining and restraining Larweth, his agents, Anton Rx, Anton Health, and Polestar[2] from:

> a. engaging, directly or indirectly, in the provision of pharmaceutical rebate management services. Excepted from this injunction is the provision of any services necessary to fulfill his current contractual obligations, however, renewal of these contracts is prohibited;
> b. directly or indirectly soliciting for employment in the business of pharmaceutical rebate management services any employee of Magellan who is employed with Magellan or who was employed with Magellan within the one-year period immediately prior to Larweth's termination; and
> c. directly or indirectly soliciting any customer of Magellan—as defined by the Magellan Employment Agreement—for purposes of providing pharmaceutical rebate management services.

("Preliminary Injunction") (Doc. 145 at 17–18); *see also* Doc. 186.

Thereafter, on December 17, 2019, this Court granted Magellan's motion for summary judgment, the facts in support of which are also fully adopted and incorporated herein,[3] on its breach of contract claim against Larweth as to liability with regard to the reasonableness and enforceability of the non-competition and non-solicitation of customers restrictive covenants contained in his Employment Agreement with Magellan. (Doc. 182). Specifically, the Court found:

---

[1] *See* Doc. 60.

[2] On December 23, 2019, the Court issued an Order clarifying that Polestar is included in the Preliminary Injunction. (Doc. 186).

[3] *See* Doc. 137.

> Magellan has established that the non-competition and non-solicitation of customers covenants are reasonable and enforceable, and Larweth has not met his burden as to any of his affirmative defenses. Therefore, Magellan is entitled to summary judgment on its declaratory judgment claim insofar as it relates to the non-competition and non-solicitation of customers provisions. Further, because Larweth does not dispute that he violated those covenants, . . . Magellan is entitled to summary judgment as to liability on its breach of contract claim insofar as it asserts violations of the non-competition and non-solicitation of customer covenants.

(*Id.* at 25). The Court did not address whether Magellan's Preliminary Injunction should be converted into a permanent injunction, however, because Magellan did not seek summary judgment as to damages or injunctive relief at that time. (*Id.* at 6).

Based upon this Court's findings that Larweth's non-competition and non-solicitation of customers restrictive covenants are enforceable and that Larweth violated such restrictive covenants, Magellan respectfully requests that this Court convert the Preliminary Injunction, modified as set forth herein, into a permanent injunction through and including July 31, 2022,[4] immediately barring Larweth, his agents, Anton Rx, Anton Health, Polestar, and any entities through which he does business or in the future may do business, from engaging, directly or indirectly, in the provision of pharmaceutical rebate management services and soliciting Magellan "customers" (as that term is defined in his Employment Agreement). Importantly, Magellan requests that as part of the permanent injunction, Larweth be ordered to immediately terminate all remaining contracts and cease doing the business he was allowed to continue under the Preliminary Injunction, as that business falls squarely within the scope of Larweth's

---

[4] Larweth's three-year restrictive period was set to expire on January 5, 2021. Magellan, however, requests that, pursuant to the equitable principles of tolling, the restrictive period be extended to three years following the entry of the Preliminary Injunction due to Larweth's blatant and continued violations of the restrictive covenants. *See infra* Part VI.

3

restrictive covenants. Finally, and as set forth below, Magellan requests that any payments due to Larweth (or his companies) but not yet received as a result of any pharmacy rebate business activities he conducted in violation of his restrictive covenants be deposited into the registry of the Court until such time as the proper recipient of such funds is determined.

## LEGAL STANDARD

To obtain a permanent injunction, Magellan must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted). The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction, "except that the movant must establish actual success on the merits, as opposed to a likelihood of success." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006) (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)). In accordance with the Court's summary judgment order and as set forth below, Magellan has established actual success on the merits and is entitled to a permanent injunction.

## MEMORANDUM OF LAW

### I. Magellan Has Suffered Irreparable Injury From Larweth's Violations.

Larweth's violations are presumed to irreparably harm Magellan and Larweth has not proven otherwise. "An irreparable injury is an injury that is of such a nature that it cannot be adequately compensated in damages, or cannot be measured by any pecuniary standard." *CT*

4

*Cellar Doors, LLC v. Palamar*, No. UWYCV105016075S, 2010 WL 5573704, at *5 (Conn. Super. Ct. Dec. 10, 2010) (citing *Conn. Ass'n, Clinical Labs. v. Conn. Blue Cross, Inc.*, 324 A.2d 288 (1973)). Irreparable harm is "rebuttably presumed where a covenant not to compete, which has been found to impose only a reasonable restraint has been violated." *Id.* (quotation omitted); *see Mattis v. Lally*, 82 A.2d 155, 157 (Conn. 1951) ("Irreparable damage would inevitably result from a violation of the defendant's promises.").

Based on the Court's finding that Larweth's non-competition and non-solicitation of customers restrictive covenants are reasonable and enforceable, and that Larweth violated those covenants, irreparable injury to Magellan is not only presumed, but has been definitely established.  As this Court found, even absent a *presumption* of irreparable harm, Magellan has unequivocally established irreparable harm in that Larweth, armed with the confidential business information and the customer relationships gained only through his employment with Magellan, can—and has—used this information to unfairly compete with Magellan. *See* Doc. 145 at 13.  Larweth has engaged in significant competition with Magellan by using the relationships and information he gained during his employment with Magellan to obtain rebate business with Magellan's clients, including but not limited to AscellaHealth, LLC, CenCal, Moda, and Health Plan Partners. *See* Transcript of Preliminary Injunction Hearing, May 28-29, 2019, Vol. 2 at 162:19-163:2.; *see also* Doc. 185  at 14 ("Even if it were not common sense that knowledge of this confidential information [referring to Larweth's knowledge of Magellan's confidential contract addenda and its financial and coverage terms] would enable someone to unfairly compete with Magellan, one of Larweth's employee's, Craig Caceci, provided examples of how Anton Rx undercut Magellan by passing though larger portions of

5

rebates to customers. Absent knowledge of Magellan's pricing and business structure, Larweth would not have been able to so deliberately undercut Magellan's prices.") (internal citations omitted). Moreover, Larweth has indirectly assisted a key competitor of Magellan's to obtain pharmacy rebate management business from Magellan client, Independent Health—assistance which has resulted in the irreparable loss of the customer's goodwill as well as millions of dollars to Magellan (and a strikingly similar corresponding gain to Larweth for providing such assistance). *See* Doc. 162 at 5–8; Doc. 97-15; Doc. 97-16; Doc. 97-17; Doc. 97-18. Additionally, Larweth has admitted to soliciting other Magellan clients for pharmacy rebate management business which continues to affect and erode Magellan's relationships with such clients. *See* Doc. 60-5 at 129:11-130:22, 131:21-132:19, 133:17-134:14, 193:14-195:24. Absent a permanent injunction, Larweth's improper solicitation and competition utilizing the relationships and knowledge gained from Magellan has and will continue to irreparably harm Magellan.[5]

## II. The Remedies Available At Law Are Inadequate To Compensate Magellan For The Injury Caused By Larweth's Violations.

Larweth's violations are presumed to foreclose an adequate remedy at law to compensate Magellan for the injury caused by Larweth's violations. Like irreparable injury, lack of adequate remedy at law is "rebuttably presumed where a covenant not to compete, which has been found to impose only a reasonable restraint has been violated." *CT Cellar*

---

[5] As the Court indicated in the Preliminary Injunction Order, any supposed "delay" by Magellan is not sufficient to overcome the presumption of irreparable harm. Nor is the ability of Magellan to potentially win back the customers lost to Magellan due to Larweth's unlawful competition. *See* Doc. 145 at 13-14. Moreover, neither of these arguments detracts from the *actual* (rather than presumed) irreparable harm Magellan has suffered.

*Doors, LLC v. Palamar*, No. UWYCV105016075S, 2010 WL 5573704, at *5 (Conn. Super. Ct. Dec. 10, 2010) (quotation omitted). Again, Larweth has not and cannot rebut this presumption.

Based on the Court's summary judgment order, the restrictive covenants at issue have been determined to be reasonable. Doc. 182 at 25. Larweth openly and repeatedly admits he violated these restrictive covenants. *See* Doc. 60-5 at 129:11–130:22, 131:21–132:19, 133:17–134:14, 193:14–195:24; Doc. 60-10; Doc. 182 at 25 (citing Doc. 98-1 at 124:19–125:4; Doc. 71-4 at 3–4; Doc. 123 at 162:13–163:7). Even assuming Magellan recovers damages at trial, damages alone will not adequately compensate Magellan for the injury caused by Larweth's violations. Larweth's knowledge of confidential business information and customer relationships—gained only through his employment with Magellan— has provided, and will continue to provide Larweth with the ability to harm Magellan even after a trial occurs and damages are assessed. The pharmaceutical rebate market is a highly specialized business based predominantly on contacts, relationships, and confidential information. *See* Doc. 60-6 at ¶¶ 16–17; Doc. 122 at 91:8–92:6, 97:1–15, 102:22–104:12; Doc. 123 at 50:3–15. Despite any damages Magellan is able to prove and recover at trial, a permanent injunction is needed to stop Larweth from improperly competing, continuing to solicit clients and eroding Magellan's relationships in the market, and from continuing to utilize Magellan's confidential information. *See Hart, Nininger & Campbell Assocs., Inc. v. Rogers*, 548 A.2d 758, 765–66 (Conn. 1988) (trial court's award for injunctive relief in addition to monetary damages in the form of future lost profits for breach of restrictive covenant was proper where "[g]iven the very specialized business involved, the money damages alone would not have protected the plaintiff from future

wrongful conduct by the defendants"). Money damages alone will not protect Magellan from Larweth's continuing and future efforts to compete and solicit clients. A permanent injunction, therefore, is necessary to protect Magellan. *See id.* at 766 (award of injunctive relief in addition to future lost profits for breach of restrictive covenant was not unfairly duplicative because the awards covered "two very distinct situations, namely, the loss of future commissions and the protection against further harmful competitive business activity").

### III.    A Remedy In Equity Is Warranted In This Case.

Analyzing the balance of hardships between Larweth and Magellan confirms that a remedy in equity is warranted in this case. As explained in Magellan's motion for preliminary injunction and confirmed by the Court in the Preliminary Injunction Order, a permanent injunction pertaining to these restrictive covenants will not wholly prohibit Larweth from pursing his profession. (Doc. 60 at 19, 21, 24; Doc. 145 at 14 ("enforcing the covenants will not wholly prohibit [Larweth] from pursuing his career")). Instead, it will simply impose the bargained-for delay in Larweth's ability to directly compete with Magellan in the narrow field of pharmaceutical rebate management services – a restriction which he already agreed to when entering into the Employment Agreement and receiving, in exchange, $12 million from Magellan. Notably, Larweth already has a business formed and operating—Anton Health— that, according to Larweth's representations to this Court and Magellan, does not engage in the services prohibited by the preliminary injunction. He can continue that business during the pendency of the permanent injunction (as long as it does not also engage in the prohibited services or pharmaceutical rebate management), or he can return to his position of employment

8

with a pharmaceutical company—a position he held for over a decade prior to arriving at Magellan.

Moreover, in entering the Preliminary Injunction in this case, the Court permitted Larweth to complete his then-current obligations and wind down his business. (Doc. 145 at 14, 18). To this end, the Court took the careful interim step to allow this carve out. Now that a summary judgment determination has been made in Magellan's favor establishing success on the merits of its breach claim (Doc. 182 at 25), Larweth is no longer entitled to the benefit of the doubt and should not be entitled to continue *any* business in the prohibited field covered by the restrictive covenants (noncompete and customer nonsolicitation). During the pendency of the Preliminary Injunction, Larweth has been able to continue to realize millions of dollars of revenue from his unlawful contracts (in addition to the millions of dollars he obtained unlawfully prior to the Preliminary Injunction Order). Thus, even without gaining new contracts or customers, Larweth has profited tremendously from his breach both financially, and in deepening his relationships with the Magellan clients from whom he procured business.

Larweth can no longer argue that requiring him to immediately stop working on the contracts he already secured in the prohibited field could unfairly prejudice all those involved, including the customers. To the extent Larweth argues that termination of his contracts may put *him* in breach with his clients, such argument should not stand. Any "harm" imposed on Larweth would be the result of his own choices; specifically, his choice to agree to the restrictive covenants in the first place, and his subsequent choice to blatantly disregard those restrictive covenants after his employment with Magellan ended. *See Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014) (concluding plaintiff's

hardship would outweigh defendant's hardship because violation of non-compete would impair plaintiff's goodwill and reputation in community and its ability to maintain market presence, while any harm suffered by defendant was brought about by its own actions).

Furthermore, as set forth above, a permanent injunction is necessary to adequately compensate Magellan for Larweth's violations and to prevent Larweth from continuing to violate his restrictive covenants. Magellan risks continued loss of current and potential new customers at the hands of Larweth—a former employee who, as acknowledged by the Court, has already used confidential information and vital relationships gained and fostered only as a result of employment by Magellan to Magellan's detriment. While a restrictive covenant in and of itself would normally be sufficient to ensure a former employee does not compete with or solicit customers from his former employer, Larweth's blatant—*and admitted*—violations in this case demonstrate that an additional layer of protection is necessary to hold Larweth accountable. The balance of hardships weighs greatly in Magellan's favor.

## IV. The Public Interest Would Not Be Disserved By A Permanent Injunction Barring Larweth From Competing With Magellan And Soliciting Magellan Customers.

Finally, the public interest would not be disserved by a permanent injunction in this case because Larweth and Magellan voluntarily entered into a valid contract, *i.e.*, the Employment Agreement that contained the restrictive covenants. Larweth freely and voluntarily agreed to enter into the Employment Agreement, received a $12 million dollar bonus as a result thereof, and thereafter received a substantial salary and benefits as a Magellan employee. Magellan complied with its contractual requirements; Larweth should be held to his as well. As determined by the Court in the Preliminary Injunction Order, a permanent injunction enforcing the provisions of a contract to which parties had a right to contract as they

desired similarly would not disserve the public interest. *See NCL (Bahamas) Ltd. v. O.W. Bunker USA, Inc.*, 280 F. Supp. 3d 324, 348 (D. Conn. 2017) ("[I]n light of the parties' right to contract as they desire, the injunction does nothing to disserve the public interest."), *vacated on other grounds*, 745 F. App'x 419, 417 (2d Cir. 2018); *see also* Doc. 145 at 14 ("An injunction in this case will not be adverse to the public interest. Enforcing a legitimate contract between two parties is typically in the public's interest."). Accordingly, there is no public policy reason not to enforce Larweth's restrictive covenants. *See, e.g.*, *New Horizons Comput. Learning Ctrs, Inc v. Silicon Valley Training Partners, Inc.*, No. 2:02CV459FTM29SPC, 2003 WL 23654790, at * 8 (M.D. Fla. Nov. 12, 2003) ("a court in Florida may not refuse enforcement of a restrictive covenant on public policy grounds unless the court articulates the public policy with specificity and finds that the specified public policy requirements substantially outweigh the need to protect the interest established by the proponent of restrictions").

Furthermore, enforcing Larweth's restrictive covenants by entry of a permanent injunction will not allow Magellan to create a monopoly, nor will it hurt the customers that Larweth services. Under Connecticut law, restrictive covenants do not interfere with the protection of customers unless they "would permit the plaintiff to create or maintain a monopoly." *New Haven Tobacco Co. v. Perrelli*, 18 Conn. App. 531, 537 (1989); *see also Roth Staffing Cos., L.P. v. Brown*, No. 3:13cv216 (JBA), 2015 WL 2240160, at *3 (D. Conn. May 12, 2015) (internal quotation marks omitted) ("The public's interest in a completely unrestricted marketplace does not mandate the non-enforcement of a restrictive covenant intended to safeguard an employer's business interest where the employment involves the

employee's contacts and associations with clients or customers because it is appropriate to restrain the use, when the service is ended, of the knowledge and acquaintance, so acquired, to injure or appropriate the business which the party was employed to maintain and enlarge."). In this case, however, the enforcement of Larweth's restrictive covenants will not permit Magellan to create or maintain a monopoly over the pharmaceutical rebate business because there are numerous other competitors in this space. *See* Doc. 60-5 at 258:6–11 (Larweth's attestation that there are "gazillions" of competitors in the pharmaceutical rebate industry); Doc. 122 at 153:2–9; *see also* Doc. 145 at 11, 15 (finding that enforcing Larweth's restrictive covenants will not allow Magellan to create monopoly or otherwise significantly impact public interest). For that same reason, enforcing Larweth's restrictive covenants will not harm Larweth's customers (*all* of whom were previous Magellan clients, Transcript of Preliminary Injunction Hearing, May 28-29, 2019, Vol. 2 at 189:20-23), because the customers can go to any one of the numerous competitors in the industry, including returning to Magellan. As such, enforcing the restrictive covenants will not be adverse to the public interest.

V.  **The Permanent Injunction Should Require Larweth To Terminate All Contracts Relating To Or Regarding Pharmacy Rebate Management Services Including Those He Serviced During The Preliminary Injunction Period And Larweth Should Deposit All Outstanding Revenue Attributable To Such Contracts Into The Court Registry.**

While the permanent injunction will prohibit Larweth from engaging in the pharmacy rebate business and soliciting customers, it should also specifically require Larweth and his companies to terminate all existing contracts in this field that he entered into since leaving Magellan. Those necessarily include the contracts Larweth was permitted to service during the pendency of the Preliminary Injunction. Magellan requests that within ten (10) days after

entry of a permanent injunction, Larweth and any agents or entities through which he is acting provide a thirty (30) day notice of termination on any and all contracts or agreements relating to or regarding pharmacy rebate management, directly or indirectly. This will give any customers at least 30 days to evaluate their options and enter into new agreements with other entities providing rebate services (this may include going to their pharmacy benefit manager, to Magellan, or to a totally different vendor). Given that Larweth has repeatedly argued throughout these proceedings that health plan customers can and do terminate rebate agreements often and with very short notice (Doc. 66 at 13, 17; Doc. 147 at 9, 13), Larweth is unable to take a contrary position now simply because the termination circumstances apply to him.

Additionally, a more particularized requirement should apply to Larweth's Polestar contracts (Docs. 97-15, 97-16, 97-17, and 97-18). For those contracts, termination should occur within five (5) days after entry of a permanent injunction (with no notice required). Given Larweth's repeated (and incredulous) assertions to Magellan and this Court that he is not performing *any services* for the Magellan competitor with whom Polestar has contracted in exchange for the millions of dollars he is being paid under such contracts (Doc. 167 at 3–5), he should be required to terminate such contracts in short order.[6] Magellan further requests

---

[6] The nature of Larweth's indirect competition via his rebate management contracts with Magellan's competitor is set forth in full in Magellan's Motion for Clarification (Doc. 162) and incorporated herein. Moreover, following entry of the Preliminary Injunction Order, Magellan understands Larweth has received another *multi-million* dollar payment under these rebate management contracts he (through Polestar) entered into with Magellan's competitor. Given Larweth's continued statements to this Court that he is not performing any services whatsoever under these contracts, it follows that these contracts should not be, and were not intended to be, part of the specific carve-out provided by the Court in the Preliminary Injunction. Such carve-out allowed Larweth only to continue to "complete his current

that in order to ensure compliance with this requirement, Larweth be required to provide Magellan with copies of the termination notices and disclose in writing to Magellan and the Court the entities with whom he and his related entities have terminated contracts, the date such cancellations were made, and the effective date of the actual cancellation/cessation of business.

Moreover, it is important for the Court to address the revenue attributable to the contracts Larweth was able to maintain and service during the Preliminary Injunction period (post-July 31, 2019 to the present). For contract services performed in the third (July through September) and fourth (October through December) calendar quarters of 2019, payments would typically be received by Larweth in the first six months of 2020. Accordingly, for any such funds not yet paid or received by Larweth, Magellan requests they be paid into the Court registry until such time as it is determined who should lawfully be the recipient of these funds.[7] *See, e.g., Enerplus Res. (USA) Corp. v. Wilkinson*, No. 1:16-cv-103, 2016 WL 87378669, at

---

**obligations** and wind down his business" and render "services ***necessary to fulfill his current contractual obligations*** " (Doc. 145 at 14, 18)(emphasis added). Larweth was not entitled to keep the contracts in place where he had no ongoing service obligations and merely continued to receive millions of dollars based on services he provided in violation of his restrictive covenants at the outset of the contracts (and prior to the Preliminary Injunction). While Magellan has not had the benefit of discovery on these actions by Larweth (since they occurred post-discovery and following the entry of the Preliminary Injunction), Magellan asserts that such actions, if true, are a violation of the Court's Preliminary Injunction Order and would ask the Court to order Larweth to show cause why this is not the case.

[7] In its Order granting the Preliminary Injunction, the Court left open the possibility of Larweth not retaining the profits from such transactions. *See* Doc. 145 at 14 n.2 ("At this stage of the proceedings, the Court makes no findings as to whether Larweth should be allowed to retain the profits from such transactions. Such an analysis involves economic damages, which are not appropriately addressed by a preliminary injunction.").

4841-4017-1698.1

*5 (D.N.D. Aug 30, 2016) (granting preliminary injunction and ordering defendant's attorney to transfer money, which appeared to have been mistakenly paid by plaintiff to defendant pursuant to settlement agreement, to court for deposit into registry of court pending final resolution of matter).

### VI. The Permanent Injunction Should Continue Through and Including July 31, 2022, Due to Larweth's Disregard For And Continued Non-Compliance With The Restrictive Covenants.

Larweth's "blatant violations" (Doc 145 at 13) of and continued non-compliance with the restrictive covenants—which this Court has already found to be reasonable—wholly undermined the entire purpose of the restrictions to which he agreed in the first place. Pursuant to the equitable principles of tolling, Larweth's actions warrant an extension of the restrictive covenants until July 31, 2022—three years from the date of the Preliminary Injunction. Various courts applying Connecticut law have issued injunctive orders that equitably extended the duration of a restrictive covenant as remedy for breach of the restrictive covenant—even absent a tolling provision within the restrictive covenant.[8] *See, e.g.*, *United Rentals, Inc. v. Frey*, No. 3:10cv1628 (HBF), 2011 WL 693013, at *10 (D. Conn. Feb. 18, 2011); *Elizabeth Grady Face First, Inc. v. Escavich*, 321 F. Supp. 2d 420, 428 (D. Conn. 2004); *Edge Tech. Servs., Inc. v. Worley*, No. CV054008278, 2005 WL 1971109, at *9 (Conn. Super. Ct. July 5, 2005).

Likewise, various other states (including Florida) permit the term of a restrictive covenant to be extended as a form of equitable relief for breach of the restrictive covenant without a tolling provision in the restrictive covenant. *See, e.g.*, *Overholt Crop Ins. Serv. Co.*

---

[8] The Employment Agreement containing Larweth's restrictive covenants is silent as to tolling.

15

*v. Travis*, 941 F.2d 1361, 1371–72 (8th Cir. 1991) (applying Minnesota law to hold district court did not err in extending injunction beyond noncompetition agreement's two-year restrictive period because appellant's actions and resulting litigation did not allow respondent to receive benefit of restrictive covenant); *Sunbelt Rentals, Inc. v. Dirienzo*, 487 F. Supp. 2d 1361, 1363 (S.D. Fla. 2007) (holding that under Florida law, "the equitable nature of preliminary injunctions and the Supreme Court of Florida's decision in Capelouto permit, but do not require, a court to equitably extend a preliminary injunction to run from the time of entry of the preliminary injunction"); *Pro Edge L.P. v. Gue*, 411 F. Supp. 2d 1080, 1092 (N.D. Iowa 2006) (denying request in part to modify preliminary injunction enjoining former employee from violating non-competition provisions of employment agreement, which precluded competition until resolution of the case, rather than one-year after his termination from the company, but modifying injunction to reflect expiration date of one year from date defendant admitted he quit performing competing services); *Presto-X-Company v. Ewing*, 442 N.W.2d 85, 90 (Iowa 1989) (court's equitable powers permitted extension of restrictive covenant for one year from date of opinion to: (1) ensure integrity of judicial process because holding otherwise would encourage defendants in similar cases to delay litigation by expending maximum amount of restraint period; (2) protect effectiveness of restrictive covenants; and (3) give employer chance to regain its customers lost due to employee's violation); *Capelouto v. Orkin Exterminating Co. of Fla.*, 183 So. 2d 532, 534–35 (Fla. 1966) (finding no abuse of discretion where court enjoined employee's competition and ordered two-year injunctive period to commence one and a half months after court order rather than on date of order or on date employee terminated employment).

Larweth completely ignored his restrictive covenants for more than half of the restrictive period. It was not until this Court entered its Preliminary Injunction Order that Magellan began to get the benefit of the agreement for which it bargained. However, even under the Preliminary Injunction, Larweth has been able to continue with certain business in the prohibited field and earn considerable money. All of Larweth's actions point to calculated decisions and actions on his part that violating the restrictive covenants will be and have been more lucrative and beneficial to him, despite the Court's Preliminary Injunction. *See* Transcript of Preliminary Injunction Hearing, May 28-29, 2019, Vol. 1 at 106:23-108:18 (Larweth's statement to George Petrovas that there was "a shitload of dollars [to be made] in rebates" and that Larweth could "make 5 or $10 million pretty quickly, more than enough to pay any legal fees" if he left and competed with Magellan in pharmacy rebates). Larweth should not be allowed, at the end of this case, to be in a more advantageous position than when he left Magellan and breached his restrictive covenants. This Court should therefore equitably extend the restrictive period until July 31, 2022, to allow for what was intended in the bargain between the Parties.

**CONCLUSION**

For the reasons stated herein, Magellan respectfully requests that this Court grant the instant Motion and enter a permanent injunction immediately barring Larweth, his agents, Anton Rx, Anton Health, Polestar, and any entities through which he does business or in the future may do business, from (1) engaging, directly or indirectly, without exception, in the provision of pharmaceutical rebate management services, and (2) directly or indirectly soliciting any customer of Magellan—as defined by the Magellan Employment Agreement—

for purposes of providing pharmaceutical rebate management services, and that such permanent injunction be extended under equitable principles of tolling through and including July 31, 2022. Magellan also requests that Larweth terminate all existing unlawful contracts in the pharmacy rebate business, and pay into the Court registry any funds owed to him or his entities but not yet received. Magellan further seeks Larweth to provide written confirmation of his compliance with the requirements as imposed by the Court. Finally, Magellan requests that the Court release the $10 million bond Magellan posted following entry of the Preliminary Injunction (Doc. 150).

Dated: January 22, 2020

Respectfully submitted,

/s/Joyce Ackerbaum Cox
Joyce Ackerbaum Cox, Esq.
Florida Bar No. 0090451
E-Mail: jacox@bakerlaw.com
Patrick M. Muldowney, Esq.
Florida Bar No. 0978396
E-Mail: pmuldowney@bakerlaw.com
Mary Caroline Cravatta, Esq.
Florida Bar No. 125712
E-mail: mcravatta@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Post Office Box 112
Orlando, Florida 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

***Counsel for Defendant/Counter-Plaintiff***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of January 2020, a true and correct copy of the foregoing has been served via ECF to all counsel of record on this action:

Christopher S. Prater, Esq.
cprater@pollardllc.com
Jonathan Pollard, Esq.
jpollard@pollardllc.com
POLLARD PLLC
401 E. Las Olas Blvd., Ste. #1400
Fort Lauderdale, FL 33301

</br>

*/s/ Joyce Ackerbaum Cox*
Joyce Ackerbaum Cox